IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

FRANCISCO ESTEVAN BACA,

      Plaintiff,

v.                                                              CV 16-246 WPL

NANCY A. BERRYHILL,
Acting Commissioner of the
Social Security Administration,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

Francisco Baca began receiving supplemental security income (SSI) as minor, based on an application filed in 2005. When he reached the age of eighteen, the Social Security Administration (SSA) was required to redetermine his eligibility for continuing benefits. 20 C.F.R. § 416.967. During that redetermination, an Administrative Law Judge (ALJ) found that Baca is not disabled under the adult standards and found him ineligible for SSI. (Administrative Record (AR) 20). Baca filed for review by the Appeals Council. The Appeals Council denied review on February 3, 2016, but added additional exhibits to the AR. (AR 1, 6.) Baca then filed his motion to reverse and remand in this Court. (Doc. 21.) The Commissioner of the SSA filed a response (Doc. 25) and Baca filed a reply (Doc. 26). For the reasons explained below, I deny Baca's motion to remand and dismiss this case with prejudice.

**STANDARD OF REVIEW**

When the Appeals Council denies a claimant's request for review, the ALJ's decision is the SSA's final decision. In reviewing the ALJ's decision, I must determine whether it is

supported by substantial evidence in the record and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004) (quotation omitted). A decision is not based on substantial evidence if other evidence in the record overwhelms it or if there is a mere scintilla of evidence supporting it. *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004). Substantial evidence does not, however, require a preponderance of the evidence. *U.S. Cellular Tel. of Greater Tulsa, L.L.C. v. City of Broken Arrow, Okla.*, 340 F.3d 1122, 1133 (10th Cir. 2003). I must meticulously examine the record, but I may neither reweigh the evidence nor substitute my discretion for that of the Commissioner. *Hamlin*, 365 F.3d at 1214. The Court may reverse and remand if the ALJ failed "to apply the correct legal standards, or to show us that she has done so . . . ." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996).

## SEQUENTIAL EVALUATION PROCESS

The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); 20 C.F.R. § 416.920(a)(4) (2016). The same process is used when redetermining an individual's eligibility for continuing benefits when that person turns eighteen. 42 U.S.C. § 1382c(a)(3)(H)(iii); *see also*, *Wagner v. Comm'r of Soc. Sec.*, 2010 WL 3036763, at *3 (N.D. Ohio July 15, 2010). If a finding of disability or nondisability is directed at any point, the ALJ will not proceed through the remaining steps. *Thomas*, 540 U.S. at 24. At the first three steps, the ALJ considers the claimant's current work activity, the medical severity of the claimant's impairments, and the requirements of the Listing of Impairments. *See* 20 C.F.R. § 416.920(a)(4), & Pt. 404, Subpt. P, App'x 1. If a claimant's impairments are not equal to one of those in the Listing of Impairments, then the ALJ proceeds to the first of three

phases of step four and determines the claimant's residual functional capacity ("RFC"). *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. § 416.920(e). The ALJ then determines the physical and mental demands of the claimant's past relevant work in phase two of the fourth step and, in the third phase, compares the claimant's RFC with the functional requirements of his past relevant work to see if the claimant is still capable of performing his past work. *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. § 416.920(f). If a claimant is not prevented from performing his past work, then he is not disabled. 20 C.F.R. § 416.920(f). The claimant bears the burden of proof on the question of disability for the first four steps, and then the burden of proof shifts to the Commissioner at step five. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Talbot v. Heckler*, 814 F.2d 1456, 1460 (10th Cir. 1987). If the claimant cannot return to his past work, then the Commissioner bears the burden, at the fifth step, of showing that the claimant is capable of performing other jobs existing in significant numbers in the national economy. *See Thomas*, 540 U.S. at 24-25; *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

## DISCUSSION

Baca, a twenty-three year old male with a high school education and no relevant work experience, argues that the ALJ made several errors requiring remand of his case. The ALJ found that Baca has the RFC to "perform light work . . . [and] make simple work related decisions, with few workplace changes. However, he should not be required to work at a production rate pace, or perform tandem tasks." (AR 16.) She also found that Baca's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely credible." (AR 17.) At step five, the ALJ relied on a vocational expert's (VE) testimony to determine that Baca can

do other jobs existing in substantial numbers in the economy. (AR 20.) Therefore, the ALJ determined that Baca is not disabled.

Baca's records begin in 2002. I have reviewed the entire AR, but discuss only those facts and records relevant to the disposition of this case.

Baca alleges that the ALJ erred in several regards at step four: 1) the ALJ stated she gave an agency non-examining physician's opinion "great weight," but failed to include all of the identified limitations in the RFC or explain why some limitations were left out; 2) the ALJ erred by adopting the opinions of non-examining physicians and failing to consider them in light of later developed evidence, in violation of Social Security Ruling (SSR) 96-6p, 1996 WL 374180 (July 2, 1996)[1]; 3) the ALJ improperly discounted the third party statement of Baca's grandmother, who has also been his guardian; 4) the ALJ erred in her credibility determination of Baca by addressing generalities rather than specific facts and the ALJ cited records in the AR that do not support the ALJ's conclusions; and 5) the ALJ's RFC determination that Baca's only limitation as to concentration is that he cannot work at a production rate pace is not supported by substantial evidence and is impermissibly vague. Even if the ALJ did not err at step four, Baca contends that the ALJ committed additional reversible errors at step five, specifically: 1) the ALJ erred in relying on the VE testimony because the proposed RFC failed to include all of Baca's limitations; 2) the VE's opinion was contrary to the "no production rate pace" limitation in Baca's RFC and the ALJ failed to explain or clarify this discrepancy; 3) the ALJ was required to, but did not, clarify the inconsistencies between the VE's testimony and the RFC; and 4) the ALJ found that Baca could perform other jobs existing in the economy even though he requires

---

[1] SSRs are binding on the SSA, and while they do not have the force of law, courts traditionally defer to SSRs since they constitute the agency's interpretation of its own regulations and foundational statutes. *See Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (1990); 20 C.F.R. § 402.35; *see also Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993) (SSRs entitled to deference).

special supervision and the VE testified that requiring special supervision eliminates competitive work.

In December 2012, state agency non-examining provider, Cathy Simutis, Ph.D., reviewed Baca's records and filled out a Mental RFC Assessment (AR 348-50) and a Psychiatric Review Technique form (AR 352-62). Dr. Simutis indicated that Baca experiences moderate limitations in his ability to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, work in coordination with or proximity to others without being distracted by them, complete a normal workday and workweek without interruptions from psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods. (AR 348-49.) In Section III of the Mental RFC Assessment, Dr. Simutis wrote that "Claimant can understand, remember, and carry out simple instructions, make simple decisions, attend and concentrate for 2 hours at a time, interact adequately with co-workers and supervisors, and respond appropriately to changes in a routine work setting." (AR 350.) Dr. Simutis indicated that she reviewed the third party function reports and Baca's function reports, as well as a teacher questionnaire and individualized education plan, and the report of a psychological consultative examination. (AR 364.)

When considering Dr. Simutis's opinion, the ALJ stated that she gave it great weight and agreed with the

> view that the claimant remains capable of performing simple, unskilled work, as I agree that the claimant remains capable of engaging in a numerous degree of activities that have included going to the gym, socializing with friends, playing video games, skateboarding, maintaining his personal care, preparing simple meals, performing some household chores, and shopping at the mall, despite his impairments.

(AR 18 (internal record citation omitted).)

Baca argues that the RFC did not reflect all of Dr. Simutis's assessed limitations and she failed to explain the discrepancy. Baca is incorrect. While Dr. Simutis did mark that Baca experiences moderate limitations with regard to performing at a consistent pace, she later wrote that Baca can attend and concentrate for two hours at a time. The ALJ could have been more precise in her treatment, but the RFC includes these limitations by excluding Baca from work which requires "production rate pace." (AR 16.) The ALJ adequately assessed and incorporated Dr. Simutis's findings into the RFC.

Two other agency physicians—David Green, M.D., and Rayme L. Romanik, M.D.—reviewed Baca's records and drafted case analyses in December 2012 and December 2013, respectively. In 2012, Dr. Green noted that there were no "physical allegations or treatment for physical impairment" in Baca's records and found that Baca had no severe physical medically determinable impairments. (AR 366.) Dr. Romanik, in 2013, found that Baca's migraines are generally controlled and that there was no record evidence of restless leg syndrome. (AR 507.) The ALJ gave these opinions great weight and noted that the record contains "minimal evidence of physical restrictions . . . [and] that the claimant's providers have noted no significant functional limitations in the claimant's physical abilities." (AR 18 (internal record citation omitted).)

Baca cites to subsequent medical records related to his mental health treatment for attention deficit hyperactivity disorder (ADHD), fatigue, and insomnia. He also cites to a 2015 sleep study conducted by Peter Guido, M.D., but failed to note that Dr. Guido found no clinically significant sleep apnea, sleep related breathing disorder, or periodic limb movement disorder. (AR 611.) Baca also cites to an April 2015 echocardiogram that found a stable, asymptomoatic

aortic stenosis. (AR 592.) Finally, Baca reported shoulder pain and leg pain in 2015. (AR 620-22, 631.) According to Baca, the ALJ failed to consider all of these impairments.

This is incorrect. The ALJ is not required to "discuss every piece of evidence," but rather to "demonstrate that [she] considered all of the evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). The ALJ's opinion demonstrates that she did consider all of the evidence and did consider the cumulative impact of Baca's combination of impairments. (*See* AR 17-18 (discussing Baca's migraines, ADHD, and third reports of functional ability).)

Next, Baca argues that the ALJ improperly discounted the opinion of Anita Baca, his grandmother and guardian. The ALJ concluded that Anita Baca's opinion was not entitled to "significant weight" because her statement are inconsistent with the rest of the record, she is not trained to make exacting observations, and she cannot be considered a disinterested third party witness based on her relationship with Baca. (AR 18.) Baca contends that Anita Baca's opinion was "relevant evidence" and that Baca's own description of his functioning may present a rosier picture than the reality. (*See* Doc. 21 at 10-11.)

Baca's argument is not fully developed. While SSR 06-03P does provide that evidence from family members, as well as other non-medical sources, may be used to "provide insight into the severity of the impairment(s) and how it affects the individual's ability to function," the ruling only requires the "consideration of such evidence when evaluating an 'acceptable medical source's' opinion." 2006 WL 2329939, at *2-4 (Aug. 9, 2006). The ALJ demonstrated that she considered Anita Baca's opinion in connection with the medical evidence of record. This is sufficient.

Baca then makes two connected arguments: that ALJ erred in evaluating his credibility and that the ALJ cited to irrelevant records when making that determination. Baca makes a

7

critical error, however. In arguing that the ALJ determined Baca's credibility based on "occasional drug usage" (AR 17), Baca infers that the ALJ meant illegal drug usage. The records to which the ALJ cites—AR 522, 533, and 541—are records from medical providers indicating that Baca does not consistently take his prescribed ADHD medication. Baca's argument misrepresents or misconstrues the ALJ's opinion in relation to the records. He does not make any additional argument as to how the ALJ weighed the evidence when determining his credibility and has therefore waived any such argument.

Finally, Baca alleges that the ALJ erred by finding that he had no limitation in his ability to concentrate and that the only reference to his ability to persist or perform is the limitation that he not work at a production rate pace. Baca claims that these findings are vague and unsupported by substantial evidence. Baca is incorrect.

Beginning in 2012, Baca's teachers reported that he "[c]hooses not to do his work, would rather talk in class and make jokes" and that he "often times goofs around in class instead of getting work done." (AR 312.) In a teacher questionnaire filled out by Steve Castille in October 2012, Castille notes that Baca has no problem paying attention when spoken to directly or sustaining effort during play or sports activities, has slight problems focusing long enough to finish assigned activities or tasks, and that he is "[e]asily distracted" and "would rather goof around then [sic] produce work." (AR 201.) Consultative examiner John Owen, Ph.D., found in October 2012 that Baca has mild-to-moderate difficulty attending and concentrating. (AR 344.) Dr. Simutis, however, found that Baca can "attend and concentrate for 2 hours at a time." (AR 350.)

Nothing in the record directly contradicts Dr. Simutis's finding. It is not my place to reweigh the evidence or even to determine if I would have come to the same conclusion. Rather,

I am tasked with determining whether substantial evidence supports the ALJ's determination. In this instance, I am constrained to say that it does.

As to Baca's contention that it is a vague finding to prohibit him from production rate pace, this is argument is undeveloped and bordering on nonsensical. "Production rate pace" is a commonly used term to refer to assembly line work, but does not refer to goal-oriented tasks like being an office cleaner. A commonsense reading of the RFC suggests that "production rate pace" is not vague.

Having reviewed Baca's claims of error and determined that the ALJ did not err at step four, I proceed to the alleged errors at step five.

Baca first alleges that the RFC failed to include all of his limitations and thus any reliance on the VE's testimony was error. I have already discussed Baca's claims of error at step four and determined that the RFC is supported by substantial evidence. Because the RFC is sound, this argument fails.

Next, Baca argues that the VE's opinion was contrary to the limitation against production rate work and that the ALJ improperly found that Baca could perform the jobs of nut sorter, cuff folder, laminating machine off bearer, and final assembler, which are performed on a production line. It is unnecessary to determine if this finding is error because the ALJ also found that Baca could perform the jobs of cleaner/housekeeping and presser/hand. As for the housekeeping job, Baca claims that this requires "production rate pace" work because he would be expected to clean a certain number of rooms per day. Baca misconstrues the commonsense application of "production rate pace." While he would be required to clean a certain number of rooms in a given time period, he could stop and start, accelerate or decelerate as necessary in that

timeframe. So while the ALJ could have been clearer on this point, she did not commit reversible error by failing to clarify the VE's testimony.

Baca then argues that he is unable to work without special supervision, which would eliminate all competitive employment opportunities. Baca does not argue that this is a failure of the RFC, but rather an end-run around the VE's testimony. Baca attempts to "backdoor" a limitation at step five that does not exist. Dr. Owen opined that Baca would have moderate difficulty working without supervision, but did not opine that he would require special supervision. (AR 345.) Dr. Simutis did not adopt either limitation. (AR 348-49.) No other provider made reference to requiring special supervision of any kind. This argument, likewise, fails.

Finally, Baca argues that the ALJ was required to clarify any inconsistencies between the VE's testimony and the RFC. This is true. However, Baca failed to identify any true inconsistencies between the VE's testimony and the RFC.

The ALJ did not commit reversible error at step five.

## CONCLUSION

As explained above, the ALJ did not commit reversible error in this case. The decision of the SSA is therefore affirmed and Baca's motion to reverse and remand is denied.

It is so ordered.

_William P. Lynch_
William P. Lynch
United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any pro se
party as they are shown on the Court's docket.